IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GLENDA GADOW AND DONALD GADOW, SR.,
individually and on behalf of the wrongful death beneficiaries
for Donald Gadow, Jr., Deceased                                    PLAINTIFFS

v.                                          CIVIL ACTION NO. 1:24-CV-84-SA-DAS

SHEARER-RICHARDSON MEMORIAL NURSING HOME;
OKOLONA MISSISSIPPI ENDOWMENT FOUNDATION OF
THE SHEARER AND RICHARDSON FAMILIES D/B/A
SHEARER-RICHARDSON MEMORIAL NURSING HOME;
CHICKASAW COUNTY BOARD OF SUPERVISORS                DEFENDANTS

ORDER AND MEMORANDUM OPINION

Glenda Gadow and Donald Gadow, Sr., individually and on behalf of the wrongful death beneficiaries of Donald Gadow, Jr., ("the Plaintiffs") initiated this civil action on May 9, 2024. Before the Court are Shearer-Richardson Memorial Nursing Home ("Shearer-Richardson") and the Chickasaw County Board of Supervisors' ("the Board") respective Motions to Dismiss for Failure to State a Claim [7, 29]. The Motions [7, 29] have been fully briefed and are ripe for review.[1] The Court is prepared to rule.

*Relevant Factual and Procedural Background*

This case arises from the death of Donald Gadow, Jr. while a resident at Shearer-Richardson Memorial Nursing Home. The Complaint [1] alleges that on January 11, 2023, Gadow choked to death after being provided food and left unattended while eating. According to the Complaint [1], "the Defendants" knew that Gadow had difficulty swallowing and was at risk of choking. [1] at p. 5.[2] Gadow had several medical diagnoses—"1. Gastro-Esophageal Reflux

---

[1] The Chickasaw County Board of Supervisors filed a Motion to Dismiss [22] and then filed an Amended Motion to Dismiss [29] after the Plaintiffs served the proper party. The Amended Motion to Dismiss [29] is the operative motion before the Court.

[2] As will be discussed below, the Complaint [1] consistently refers to "the Defendants" collectively.

Disease Without Esophagitis, 2. Seizure disorder, 3. Down Syndrome, 4. Autistic disorder, and 5. Cerebral Palsy,"—and an Order Summary that stated, "MONITOR BEHAVIORS EVERY SHIFT." [1] at p. 6. The Complaint [1] asserts that the Defendants' failure to monitor Gadow while eating resulted in his death.

According to the Complaint [1], when Glenda Gadow was contacted about Gadow's death, the "Defendants did not tell her that he died from choking, . . . [and] even went as far to say that he was not eating at the time of his death; yet the family found his empty plate outside of his door as well as partially chewed hot dog and bun in the trash near him when they arrived at the facility." *Id.* at p. 6. The Complaint [1] alleges that a note from Gadow's medical record indicates that Gadow was left unattended for at least one hour after being provided food.

The Complaint [1] brings claims pursuant to 42 U.S.C. § 1983 for violations of the Federal Nursing Home Reform Act ("FNHRA") and the Fourteenth Amendment, as well as state law claims for medical and common law negligence and declaratory relief.

In its Motion [7], Shearer-Richardson asserts that the Complaint [1] fails to allege sufficient facts to state a cognizable violation of Gadow's rights under the FNHRA or support a municipal liability theory under *Monell*. The Motion [7] alternatively requests a more definite statement under Rule 12(e). In its Motion [29], the Chickasaw County Board of Supervisors seeks dismissal on the basis that it lacks the legal capacity to be sued. The Plaintiffs oppose both Motions [7, 29].

*Legal Standard*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)

2

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 157 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

In considering the motion, the court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, but the court need not accept "legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)).

*Analysis and Discussion*

The Court will consider Shearer-Richardson's Motion [7] before turning to the Board's Motion [29].

I.  *Shearer-Richardson's Motion to Dismiss [7]*

As noted, the Complaint [1] brings a claim pursuant to 42 U.S.C. § 1983 for violations of the FNHRA. To state a claim under Section 1983, a plaintiff must "(1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Weeks v. Thompson*, 2007 WL 316261, at *2 (N.D. Miss. Jan. 31, 2007) (citing *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)). Shearer-Richardson does not dispute that it is a state actor for Section 1983 purposes due to its status as a municipally owned community hospital.

3

Shearer-Richardson contends that the Complaint [1] fails to plausibly allege a violation of federal right.

The FNHRA includes certain statutory "[r]equirements relating to residents' rights." 42 U.S.C. § 1396r(c). In *Health and Hospital Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171, 143 S. Ct. 1444, 216 L. Ed. 183 (2023), the Supreme Court held that two FNHRA provisions relating to residents' rights—namely, the unnecessary-restraint and predischarge-notice provisions—conferred individual federal rights privately enforceable under Section 1983.

Residing within Section 1396r(c) is a list of 11 "[s]pecified rights" that "nursing facilit[ies] must protect and promote." 42 U.S.C. § 1396r(c)(1)(A)(i)-(xi).[3] The "free choice" provision provides for "[t]he right to choose a personal attending physician [and] to be fully informed in advance about care and treatment. . . [and] any changes in care or treatment that may affect the resident's well-being[.]" 42 U.S.C. § 1396r(c)(1)(A)(i). The unnecessary restraint provision provides for "[t]he right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms." 42 U.S.C. § 1396r(c)(1)(A)(ii). In brief, the remaining provisions provide for the right to privacy, the right to confidentiality and access to records, the right "to reside and receive services with reasonable accommodation of individual needs and preferences," the right to voice grievances without discrimination or retaliation, the right to participate in resident and family groups and other activities, the right to examine survey results, the right to refuse certain transfers, and "[a]ny other

---

[3] The Court notes that in *Talevski*, the two provisions found to confer privately enforceable rights were enumerated in Section 1396r(c)(1)(A) ("[s]pecified rights") and Section 1396r(c)(2)(B) (the "[p]re-transfer and pre-discharge notice" requirement, which is part of residents' "[t]ranfser and discharge rights"). 599 U.S. at 171, 143 S. Ct. 1444. None of the "[t]ransfer and discharge rights" enumerated in Section 1396r(c)(2) appear to be at issue in this case. Thus, the Court limits it analysis to Section 1396r(c)(1)'s "specified rights."

4

right established by the Secretary." 42 U.S.C. § 1396r(c)(1)(A)(iii)-(xi). Shearer-Richardson argues that the Complaint [1] fails to allege facts that state a plausible violation of any individual right conferred by the FNHRA. Instead, per Shearer-Richardson, the Complaint's [1] allegations sound in medical negligence.

The Court agrees that the Complaint [1] fails to allege sufficient facts from which the Court can infer that Shearer-Richardson violated a federally guaranteed right.

As an initial matter, with the exception of the allegations in the "Parties" section, the Complaint [1] consistently refers to the "Defendants" collectively, without attributing specific acts to Shearer-Richardson. The failure to attribute any alleged act to Shearer-Richardson runs afoul of Rule 8 in that it prevents Shearer-Richardson from ascertaining the specific acts for which it is allegedly liable and which allegedly violate a federal right. *See Alexander v. Hall*, 2021 WL 800840, at *3 (N.D. Miss. Mar. 2, 2021) (explaining that Rule 8 requires that "a plaintiff plead sufficient facts 'to provide notice to [a defendant] of the factual basis' for the plaintiff's claims") (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)). Courts have found that the failure to differentiate between defendants may be grounds for dismissal where defendants are unable to ascertain the specific acts for which they are allegedly liable. *See, e.g., Patterson v. Miss. Dept. of Mental Health*, 2023 WL 4242755, at *7 (N.D. Miss. June 28, 2023) (granting motion to dismiss where, *inter alia*, complaint referred to defendants collectively, without attributing actions to a particular party); *Pierce v. Porter*, 2023 WL 3901254, at *3 (E.D. La. June 8, 2023) ("[A] complaint that simply lumps defendants together and asserts identical allegations as to each without distinction is improper under *Iqbal* and *Twombly* because it prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions.") (*citing Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th

Cir. 2013)). Here, the Court can arguably infer that the allegations regarding Gadow being left unmonitored with food relate to the actions of Shearer-Richardson's employees. The Court will therefore refer to these allegations as being lodged against Shearer-Richardson as it walks through the allegations of the Complaint [1].

First, the facts section begins with a statement that "[t]he legal basis for and the types of losses sustained in this Complaint are for the neglect, abuse, medical malpractice, wrongful death, common law negligence, nursing home negligence, and *any applicable* federal or state statutory violations." [1] at p. 5 (emphasis added). This section of the Complaint [1] does not point to a *specific* federal right at issue. The Court is cognizant that a plaintiff need not state the precise legal theory or statutory basis for his claim. *See Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 & n.11 (5th Cir. 2015) (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 190 L. Ed. 2d 309) (2014)). However, as noted, the allegations must be sufficient to give the defendant notice of the factual basis of the claim. *See Alexander*, 2021 WL 800840, at *3. The facts alleged in the Complaint [1] indicate that Shearer-Richardson knew that Gadow needed to be monitored while eating, that the facility failed to monitor him while eating, and that this caused his death and other damages. In other words, the factual allegations of the Complaint [1] sound in negligence and do not give Shearer-Richardson notice of the facts upon which the Plaintiffs base a violation of an individual right conferred by the FNHRA.

Next, at the end of the facts section, the Complaint [1] lists five rights allegedly guaranteed by "Mississippi and federal law," as well as the "Federal and State Resident's Rights" provided to Gadow upon admission:

> a) The right to be adequately informed of his medical condition and proposed treatment, the right to be fully informed of any non-emergency changes in care or treatment, and the right to

6

       participate in the planning of all medical treatment;

  b) The right to receive adequate and appropriate healthcare;

  c) The right to be treated courteously, fairly, and with the fullest measure of dignity and respect with due recognition of personal dignity, individuality, and the need for privacy, including the right to receive a written statement and an oral explanation of the service provided by the nursing home, including those required to be offered on an as-needed basis;

  d) The right to be free from mental and physical abuse, extended involuntary seclusion, and live in a safe and decent living environment; and

  e) Any other rights specified in statutes or regulations referenced above.

[1] at p. 7-8.

The first and fourth of these allegations somewhat mirror the language of the free choice and unnecessary restraint provisions of Section 1396r. *See* 42 U.S.C. 1396r(c)(1)(A)(i)-(ii). However, the allegedly violated rights are not linked to the Complaint's [1] factual allegations in any way; the list does not identify which acts of Shearer-Richardson underlie the violation of the FNHRA provisions the Complaint [1] appears to invoke.

Following the list of allegedly violated rights, the Complaint [1] lists 15 failures, which the Plaintiffs contend are the ways in which "the Defendants" violated the listed rights. [1] at p. 8. The allegations regarding the Defendants' failures are vague and conclusory and not tied to the allegedly violated rights in any way. *See, e.g., id.* ("Failure to meet [Gadow's] needs, Failure to follow physician orders," etc.). In some instances, the Complaint [1] lists the same allegedly violated right and alleged failure. For example, the list of allegedly violated rights states that the Defendants violated "[t]he right to receive adequate and appropriate health care," and the list of the ways in which the rights were violated includes the "[f]ailure to provide [Gadow] with adequate

7

and appropriate healthcare." *Id.* Overall, these sections of the Complaint [1] fail to identify which acts of Shearer-Richardson violated a federal right.

The next section of the Complaint [1] lists the Plaintiffs' claims. Under "Count 1: Deprivation of Civil Rights Enforceable Via 42 U.S.C. § 1983," the Complaint [1] incorporates all of the preceding paragraphs and states that Gadow's death resulted from "Defendants' actionable derogation of its regulatory and statutory responsibilities as above-described." [1] at p. 9. This section is again vague and conclusory and fails to tie any act of Shearer-Richardson to the violation of a federal right. In summary, the Complaint [1] fails to identify the factual basis for a violation of the FNHRA or other federal right enforceable under Section 1983. *See Alexander*, 2021 WL 800840, at *3 (finding shotgun complaint failed to put defendants on notice of claim against it where it incorporated each factual allegation into each claim without "mak[ing] any effort to identify which acts of the defendants underlie each claim"); *Sudduth v. Lowndes Cnty., Miss.*, 2019 WL 9822861, at *4 (N.D. Miss. Feb. 28, 2019) (finding plaintiff failed to state claim where complaint clearly enumerated facts giving rise to his claims but did not link the factual allegations to list of constitutional violations); *White v. City of Grenada, Miss.*, 2021 WL 4449276, at *5 (N.D. Miss. Sept. 28, 2021) (same).[4]

---

[4] While the parties do not address it, as noted above, the Complaint [1] additionally brings a claim for violations of the Fourteenth Amendment. Like Count I, under "Count II: Violations of [the Fourteenth Amendment] for Injury to Human Dignity Enforceable Via 42 U.S.C. § 1983," the Complaint [1] incorporates all of the preceding paragraphs and states that Gadow's death resulted from "Defendants' actionable derogation of its regulatory and statutory responsibilities as above-described." [1] at p. 9. In other words, the Complaint [1] again fails to tie any facts to this allegedly violated federal right. Moreover, the substantive due process clause proscribes conduct that "shocks the conscience" and is so "brutal and offensive to human dignity" that is "among the 'most egregious official conduct.'" *United States v. Fernandez*, 559 F.3d 303, 330 (5th Cir. 2009) (citation omitted). The Complaint [1] fails to allege conduct that satisfies this "extremely high" burden. *Doe ex rel Magee v. Covington Cnty. Sch. Dist. ex rel Keys*, 675 F.3d 849, 868 (5th Cir. 2012). Therefore, the Complaint [1] fails to plausibly allege a violation of this federal right as well.

Shearer-Richardson additionally contends that even if the Complaint [1] sufficiently alleged a FNHRA violation, the Complaint [1] nonetheless fails to state a claim for municipal liability. It is well established that a municipality may not be held liable under Section 1983 on the theory of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "A municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Houston*, 613 F. 3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Id.* (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). "A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Similarly, to succeed on a failure-to-train theory, a plaintiff must show that "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Id.* at 544 (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)) (additional citation omitted).

Here, the Complaint [1] alleges that "[t]hese injuries were caused by a conscious decision on the part of Defendants and their corporate owner(s) to understaff, underfund, and fail to properly train its staff and contractors." *Id.* at p. 7. The Complaint's [1] collective reference to the Defendants is problematic here where it is unclear if the Plaintiffs allege that the Board or the Foundation was involved in the operations of Shearer-Richardson's facility. In any event, the

9

Complaint [1] contains no factual support for this allegation or any other facts from which the Court can plausibly infer that an official policy (of either Defendant) was the moving force behind the violation of any federal right. The Complaint [1] therefore fails to state a claim for municipal liability.

"When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, 'district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies. . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'" *Williams v. 1960 Fam. Prac. PA*, 2020 WL 4227592, at *3 (S.D. Tex. June 29, 2020), *report and recommendation adopted*, 2020 WL 4227531 (S.D. Tex. July 21, 2020) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 329 (5th Cir. 2002)). The Court will therefore allow the Plaintiffs to amend their complaint to cure the defects discussed herein.

Lastly, Shearer-Richardson moves to dismiss the Plaintiffs' punitive damages claim. Punitive damages are not available against a municipal defendant under Section 1983. *See Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 512 (5th Cir. 2022) (citing *City of Newport v. Fact Concerts, Inc.*, 435 U.S. 247, 262-63, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981)). The Mississippi Tort Claims Act additionally bars the recovery of punitive damages against a governmental entity. *See* MISS. CODE ANN. § 11-46-15(2). The Plaintiffs do not respond to this argument, thus abandoning their ability to seek punitive damages as a remedy. *See White v. City of Hernando*, 2022 WL 4543182, at *9 (N.D. Miss. Sept. 28, 2022) ("failure to respond amounts to an abandonment of the claims").

In summary, the Court grants Shearer-Richardson's Motion to Dismiss [7] as it relates to the Plaintiffs' ability to seek punitive damages. The Court otherwise denies the Motion's [7]

request for dismissal but grants its alternative request for a more definite statement. The Plaintiffs shall have 30 days to file an amended complaint.

II. *Chickasaw County Board of Supervisor's Motion to Dismiss [29]*[5]

As noted above, the Board argues that it should be dismissed because it is not the proper party to be sued. "The capacity of an entity to be sued is governed 'by the law of the state where the court is located.'" *Crull v. City of New Braunfels*, 267 F. App'x 338, 341 (5th Cir. 2008) (quoting FED. R. CIV. P. 17(b)(3)). "Mississippi law is. . . clear that a 'board of supervisors' has no legal existence, or capacity to be sued, separate from the County." *Cooley v. Forrest Cnty. Sheriff's Dept.*, 2020 WL 5118054, at *3 (S.D. Miss. Aug. 31, 2020) (citing *Brown v. Thompson*, 927 So. 2d 733, 733 (Miss. 2006); *Heard v. Bd. of Supervisors of Hinds Cnty.*, 575 F. App'x 239, 243 (5th Cir. 2014)); *see also Smith v. Simpson Cnty., Miss.*, 2018 WL 8997441, at *2 (S.D. Miss. May 21, 2018) ("This Court has concluded that a county board of supervisors is not a separate legal entity capable of being sued."); *Tuesno v. Jackson*, 2009 WL 1269750, at *1 (S.D. Miss. May 7, 2009) (holding that a board of supervisors is not a "legal entit[y] in and of" itself but "merely [a] department[ ] of" the county and therefore not a "proper part[y]" to an action). Therefore, the Plaintiffs are unable to state a claim upon which relief can be granted against the Chickasaw County Board of Supervisors.

---

[5] The Court notes that the Board filed two Motions to Dismiss [22, 29]. The first Motion [22] moved for dismissal under Rule 12(b)(4) for failure to serve process and dismissal under Rule 12(b)(6) for lack of capacity. The Board then filed its Amended Motion to Dismiss [29] based solely on lack of capacity, noting that the Plaintiffs served the proper person after it filed its first Motion [22]. Thus, it appeared that the Board intended for their Amended Motion to Dismiss [29] to supersede the first Motion to Dismiss [22]. However, the Reply [36] to the Plaintiffs' Response [34] to the Amended Motion [29] makes arguments regarding timeliness of service and dismissal under Rule 12(b)(4)—grounds for dismissal not raised in the Amended Motion [29]. The Court considers the Amended Motion [29] to be the operative motion before the Court. The first Motion [22] is denied as moot.

In their Response Memorandum [35], the Plaintiffs argue that they should be allowed to amend their Complaint [1] to substitute Chickasaw County in place of the Chickasaw County Board of Supervisors. In light of the fact that the Court is allowing the Plaintiffs to amend their Complaint [1] to address the deficiencies discussed above, the Court will allow the Plaintiffs to amend their Complaint [1] to substitute the County in place of the Board. The Court is cognizant of the Board's arguments that amendment would be futile due to insufficient notice under the MTCA as well as the County's lack of control over community hospitals. Should the County or Board wish to raise those arguments in response to an amended complaint, the Court will address the arguments in due course.

*Conclusion*

For the reasons set forth above, Shearer-Richardson Memorial Nursing Home's Motion to Dismiss [7] is GRANTED in part and DENIED in part. The Plaintiffs shall not be permitted to seek punitive damages as a remedy. The Plaintiffs are hereby ORDERED to file an amended complaint within thirty (30) days of today's date. The amended complaint should address the deficiencies articulated above. Should the Plaintiffs fail to timely file an amended complaint, the Court will dismiss the Complaint [1] without further notice for failure to prosecute.

The Chickasaw County Board of Supervisor's Motion to Dismiss [29] is DENIED. The Plaintiffs may substitute the County upon filing their amended complaint if they so choose. As noted above, the original Motion to Dismiss [22] is DENIED AS MOOT.

SO ORDERED, this the 10th day of December, 2024.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE